1    <u>COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983</u>

2

3    Name  **BRASURE** ,  **SPENCER**      **R.**

4        (Last)              (First)              (Initial)

5    Prisoner Number  # P 10000

6    Institutional Address  SAN QUENTIN STATE PRISON,

7    P.O. BOX # P10000 ,  SAN QUENTIN ,  CALIF.  94964

8    ==========================================

9                 UNITED STATES DISTRICT COURT    E-filing

                  NORTHERN DISTRICT OF CALIFORNIA                JF

10

      SPENCER R. BRASURE
11    (Enter the full name of plaintiff in this action.)    CV  **08**    **1943**

12                    vs.                    )    Case No. _____
                                             )    (To be provided by the clerk of court)
13    ROBERT AYERS, WARDEN, et. al.          )
                                             )    **COMPLAINT UNDER THE**
14    _____ )         **CIVIL RIGHTS ACT,**
                                             )    **42 U.S.C §§ 1983**
15    _____          )
                                             )                            **(PR)**
16    _____          )
      (Enter the full name of the defendant(s) in this action))
17    _____)

18    *[All questions on this complaint form must be answered in order for your action to proceed..]*

19    I.    <u>Exhaustion of Administrative Remedies</u>

20        [**Note:**  You must exhaust your administrative remedies before your claim can go

21        forward.  The court will dismiss any unexhausted claims.]

22        A.    Place of present confinement  SAN QUENTIN STATE PRISON

23        B.    Is there a grievance procedure in this institution?

24              YES (✓)      NO ( )

25        C.    Did you present the facts in your complaint for review through the grievance

26              procedure?

27              YES(✓)      NO (✓)

28        D.    If your answer is YES, list the appeal number and the date and result of the

COMPLAINT                    - 1 -

appeal at each level of review. If you did not pursue a certain level of appeal, explain why.

1. Informal appeal *07-0103**1**, 02-28-07, DENIED / NO LOG NO. GIVEN, 08-13-07, CDC FORM 695, "SCREENED OUT" - 09-15-07 / *07-02364, 05-31-07, "BYPASS"- DENIED                                    2. First

formal level *07-01031, 03-09-07, DENIED / NO LOG NO. GIVEN, "SCREEN OUT" LEAVES NO OTHER AVAILABLE ADMINISTRATIVE APPEAL OPTIONS. / *07-02364, "BYPASS - DENIED.

3. Second formal level *07-01031, 04-10-07, DENIED / *07-02364, 07-05-07, ~~NOT~~ DENIED.

_____ 4 Third

formal level *07-01031, 08-09-07, ~~NOT~~ DENIED / *07-02364, NOT FILED AS VIOLATION/FEDERAL POSTAL CRIME, IS UNABLE TU RESOLVE ADMINISTRATIVELY.

E.    Is the last level to which you appealed the highest level of appeal available to you?

                    YES (✓)      NO (✓)

F.    If you did not present your claim for review through the grievance procedure, explain why. *07-01031 WAS APPEALED TO THE HIGHEST LEVEL. HOWEVER 602 (NO LOG NUMBER GIVEN) FIRST DATED 08-13-07 WAS IMMEDIATELY "SCREENED-OUT", LEAVING NO OTHER APPEAL OPTIONS.

II.   Parties

A.    Write your name and your present address. Do the same for additional plaintiffs, if any.

SPENCER R. BRASURE *P10000 , SAN QUENTIN STATE PRISON, P.O. BOX *P10000 , SAN QUENTIN , CALIF. 94964

B.    Write the full name of each defendant, his or her official position, and his or her

COMPLAINT                        -2-

1        place of employment.

2  ROBERT AYERS, WARDEN, et. al.

3  SAN QUENTIN STATE PRISON

4  SAN QUENTIN, CALIF. 94964

5

6        III.

7  Statement of Claim

8       State here as briefly as possible the facts of your case. Be sure to describe how each

9  defendant is involved and to include dates, when possible. Do not give any legal arguments or

10 cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11 separate numbered paragraph.

12 ON FEBRUARY 20, 2007 THIS PETITIONER WAS RELOCATED IN

13 SAN QUENTIN'S TORTUROUS ADJUSTMENT CENTER AND IMMEDIATELY

14 HAD ILLEGAL PROPERTY CONTROL IMPOSED AS A DISCIPLINARY

15 MEASURE WHICH WAS AFFIRMED BY A CLASSIFICATION COMMITTEE

16 ON FEBRUARY 28, 2007. USING VARIOUS INMATE APPEAL FORMS

17 THIS PETITIONER BEGAN APPEALING THIS MATTER, FROM SEVERAL

18 ANGLE'S, UTILIZING THE PRISON'S INMATE ADMINISTRATIVE APPEAL

19 SYSTEM THROUGH THE VARIOUS LEVELS, EXHAUSTING ALL AVAILABLE

20 REMEDIES WITH NO RELIEF, CHALLENGING THE LEGALITY OF SAID

21 IMPOSITION (SEE ATTACHED INMATE APPEAL, #SQ-07-01031). FURTHERMORE,

22 UNDER COVER OF "PROPERTY CONTROL" THIS PETITIONERS MAIL (ALL

23 PUBLICATIONS, PERSONAL LETTERS, COSTLY POSTAGE STAMPS, ENVELOPES,

24 WRITING PAPER, PRECIOUS PHOTO'S —   — CONTINUED —

25 IV.   Relief

26      Your complaint cannot go forward unless you request specific relief. State briefly exactly

27 what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28 PUNITIVE AND COMPENSATORY DAMAGES FOR COMBINED TOTAL AMOUNT

COMPLAINT      - 3 -

1  OF $1 MILLION DOLLARS, WHICH SHOULD BE RESTITUTION AND TAX

2  FREE FOR PETITIONER; AN ORDER TO IMMEDIATELY CEASE ALL

3  CONTROVERAL "PROPERTY CONTROL"; ALL COURT COSTS, ATTORNEY FEE'S,

4  AND ALL FILING FEE'S TO BE PAID BY SAN QUENTIN, AND WHAT-

5  EVER ELSE THIS COURT SEE'S FIT — SPENCER R. BRASURE

6  SO PRAYS.

7    I declare under penalty of perjury that the foregoing is true and correct.

8

9    Signed this _25 TH,_ day of _MARCH_ , 20 _08_

10

11            _Spencer R. Brasure_

12                (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                    - 4 -

— CONTINUED FROM 42 U.S.C. §1983, PAGE 3, STATEMENT OF CLAIM —

1  MANY OF PETITIONER'S DECEASED DAUGHTER, AND ARE THUS, NOT

2  REPLACEABLE), FOR 90 DAYS WAS ALSO WITHHELD FROM THIS

3  PETITIONER AND ULTIMATELY DESTROYED. THE ILLEGAL IMPOSITION

4  OF "PROPERTY CONTROL" SEVERLY DEPRIVED THIS PETITIONER OF LIFE,

5  LIBERTY, PERSONAL PROPERTY, CANTEEN, PERSONAL PACKAGES, ALL

6  FORMS OF MAIL, AT THE VERY LEAST, FOR A PERIOD OF 90 DAYS,

7  FROM FEBRUARY 20, 2007 TO MAY 24, 2007.

8

9  FOLLOWING THE IMPOSITION OF ILLEGAL PROPERTY CONTROL THIS

10  PETITIONER WAS APPROACHED BY ADJUSTMENT CENTER PROPERTY

11  OFFICER AVILA WHO SERVED THIS PETITIONER WITH PROPERTY

12  DISPOSITION RECEIPTS AND INFORMED THIS PETITIONER THAT HE WILL

13  NOT BE STORING ANY OF THIS PETITIONER'S PERSONAL PROPERTY IN

14  THE UNIT'S "HOT PROPERTY" STORAGE, AND THEREFORE WOULD HAVE

15  TO MAKE A CHOICE FOR DISPOSITION AS OUTLINED IN (CCR 15

16  §3191(c)(1)). THIS PETITIONER CHOSE TO SEND HIS PROPERTY HOME

17  AND WAS GIVEN A DEADLINE DATE OF MAY 15, 2007 IN WHICH

18  TO DO SO. THIS TOOK PLACE ON MARCH 13, 2007. ON MARCH

19  18, 2007 THIS PETITIONER SUBMITTED A SET OF TRUST WITHDRAWL

20  FORMS, AS REQUIRED, TO PROPERTY OFFICER AVILA WITH INSTRUCTIONS

21  TO SEND THIS PETITIONERS PROPERTY HOME. AFTER RECEIVING NO

22  RESPONSE FROM AVILA THIS PETITIONER AGAIN SENT IN A

23  SET OF TRUST WITHDRAWL FORMS ON MARCH 20TH. AFTER

24  RECEIVING NO RESPONSE FROM AVILA A SECOND TIME THIS

25  PETITIONER SENT IN YET ANOTHER SET OF TRUST WITHDRAWL

26  FORMS ON MARCH 22nd. ONCE AGAIN, THERE WAS NO RESPONSE

27  FROM PROPERTY OFFICER AVILA. WHILE EXERCISING DILIGENCE

28  THIS PETITIONER DECIDED TO EXERCISE A LITTLE PATIENCE. ON

— CONTINUED —

1  APRIL 26, 2007 PROPERTY OFFICER AVILA APPROACHED THIS

2  PETITIONER, INFORMING HIM THAT HE IS WITHOUT FUNDS ON HIS

3  INMATE TRUST ACCOUNT AND THEREFORE BE UNABLE TO SEND

4  HIS PROPERTY HOME. ALREADY SENSING A PROBLEM THIS

5  PETITIONER FILED AN INMATE APPEAL (SEE INMATE APPEAL

6  #SQ-6-07-01839) WITH UNIT SERGEANT, SGT. LAMBOY,

7  REQUESTING TIME IN WHICH TO HAVE THE NECESSARY FUNDS SENT

8  TO THIS PETITIONER SO THAT PETITIONERS PROPERTY CAN BE SENT

9  HOME. SGT. LAMBOY GAVE THIS PETITIONER AN APPROVED DEADLINE

10  DATE OF MAY 15, 2007 (SEE INMATE APPEAL #SQ-6-07-01839). ON

11  MAY 14, 2007 THE PRISON'S INMATE TRUST OFFICE NOTIFIED THIS

12  PETITIONER THAT THEY HAD IN FACT RECEIVED A "WWW.JPAY.COM"

13  MONEY DEPOSIT OF $239.00 FOR THIS PETITIONER AS OF

14  MAY 11, 2007 — FOUR DAYS PRIOR TO THE WRITTEN APPROVED

15  DEADLINE DATE OF MAY 15, 2007. SHOCKINGLY, ON MAY 14, 2007,

16  ONE DAY PRIOR TO THE WRITTEN APPROVED DEADLINE DATE, THIS

17  PETITIONER WAS FURTHER ISSUED, VIA INTERDEPARTMENTAL

18  MAIL, A CDC-128 B NOTICE INFORMING THIS PETITIONER

19  THAT COUNSELOR PALMER, CCI INSTRUCTED PROPERTY OFFICER TO

20  DISPOSE THIS PETITIONERS PROPERTY — ON APRIL 24, 2007 —

21  20 DAYS PRIOR TO SGT. LAMBOY'S WRITTEN APPROVED DEADLINE

22  DATE OF MAY 15, 2007! NEEDLESS TO SAY, THIS PETITIONERS

23  PROPERTY WAS PREMATURELY DESTROYED! DESPITE HAVING THE

24  WRITTEN APPROVED DEADLINE DATE FROM SGT. LAMBOY, PETITIONER

25  NEVER ACTUALLY RECEIVED THE INMATE APPEAL OF APRIL 25, 2007

26  WITH HIS RESPONSE IN MY HANDS. AFTER A WAITING PERIOD OF

27  WHAT I FELT WAS A FAIR WAIT I FILED A TIMELY INMATE

28  APPEAL ON JUNE 13, 2007 AND SENT IT TO SGT. LAMBOY.

— CONTINUED —

1    REQUESTING THAT HE SEND ME HIS WRITTEN RESPONSE TO MY

2    APRIL 25TH. INMATE APPEAL, CITING HIS RESPONSE, RESULTING FROM HIS

3    PERSONAL INTERVIEW OF MAY 22, 2007. I NEVER RECEIVED A

4    RESPONSE SO I FILED A SECOND SAME-LIKE INMATE APPEAL ON

5    JUNE 20, 2007. AGAIN, I RECEIVED NO RESPONSE. MEANWHILE, I

6    BEGAN SENDING REQUEST'S TO REVIEW MY C-FILE IN THE HOPES OF

7    FINDING THIS INMATE APPEAL/RESPONSE FROM SGT. LAMBOY, DATED

8    APRIL 25TH./MAY 22nd. 2007. THESE C-FILE REVIEW REQUEST'S, ALSO

9    KNOW AS "OLSEN REVIEWS", HAD TO CONSTANTLY BE MADE BY ME

10   BEFORE I FINALLY GOT A RESPONSE, RECEIVING MY C-FILE REVIEW

11   ON NOVEMBER 16, 2007 WHERE I IN FACT FOUND A COPY OF THE

12   INMATE APPEAL/RESPONSE OF APRIL 25TH./MAY 22nd. 2007. MOREOVER,

13   I FILED A THIRD INMATE APPEAL DATED AUGUST 13, 2007 AND

14   AGAIN SENT IT TO SGT. LAMBOY, DEMANDING COMPENSATION

15   FOR MY PREMATURELY DESTROYED PROPERTY. UNFORTUNATELY, A

16   RESPONSE CAME THIS TIME, ON A CDC FORM 695, DATED SEPTEMBER

17   15, 2007, INFORMING THIS PETITIONER THAT THE "TIME FRAME

18   FOR FILING" HAD BEEN "EXCEEDED", EFFECTIVELY SCREENING

19   THIS PETITIONER OUT FROM ANY OTHER FURTHER ADMINISTRATIVE

20   APPEAL REMEDY REQUIREMENT. IF THIS. PETITIONER IS CORRECT,

21   ISN'T A "SCREEN OUT" RECOGNIZED AS EXHAUSTED?

22       THIS ENTIRE CRIME WAS CAREFULLY ORCHESTRATED BY SAN

23   QUENTIN SO AS TO DEFRAUD THIS PETITIONER ANY COMPENSATION

24   AND/OR LEGAL RAMIFICATIONS. THE RESULT HAS LEAD TO THIS

25   PETITIONER TO BE DENIED OF LIFE, LIBERTY, PERSONAL

26   PROPERTY, CANTEEN, PERSONAL PACKAGES, ALL FORMS OF MAIL,

27   JUST TO NAME A FEW. IN THE INTEREST OF JUSTICE THIS

28   PETITIONER SEEKS RELIEF, ORDERED BY THIS COURT, FROM

1. SAN QUENTIN, IN THE FORM OF PUNITIVE AND COMPENSATORY
2. DAMAGES, WHICH CAUSED THIS PETITIONER UNDUE DISTRESS AND
3. TORMENT, AND DENIAL OF PRIVILEDGES, FOR THE COMBINED
4. TOTAL AMOUNTS OF $1 MILLION DOLLARS, WHICH SHOULD BE
5. RESTITUTION AND TAX FREE FOR THE PETITIONER; AN ORDER
6. TO IMMEDIATELY CEASE ALL CONTROVERSAL "PROPERTY CONTROL"
7. WITH ALL COURT COSTS, ATTORNEY FEE'S, AND ALL FILING
8. FEE'S TO BE PAID BY SAN QUENTIN; ALL THIS HERE
9. REQUESTED FOR PETITIONER, SPENCER R. BRASURE, WHO
10. SO PRAYS.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

EXHIBIT

Spencer Brasure
CDC:P10000
San Quentin State Prison
San Quentin, CA 94974

A120377

addc

SPENCER R. BRASURE
filing in pro per
SAN QUENTIN STATE PRISON
P.O. BOX #P10000
SAN QUENTIN, CALIF. 94964

FILED
Court of Appeal First Appellate District

JAN 16 2008

Diana Herbert, Clerk
By_____ Deputy Clerk

STATE OF CALIFORNIA

FIRST DISTRICT COURT OF APPEAL

DIVISION ONE

SPENCER R. BRASURE          CASE NO. A120877

        v.

ROBERT AYERS, WARDEN, et. al.     MOTION FOR APPOINTMENT OF
                                  COUNSEL AND DECLARATION

TO: THE HONORABLE JUDGE, PRESIDING.

    PETITIONER, SPENCER R. BRASURE, HEREBY REQUEST'S
THIS COURT TO APPOINT COUNSEL TO REPRESENT THIS PETITIONER
IN THE PETITION FOR WRIT OF HABEAS CORPUS, BEING FILED
CONCURRENTLY WITH THIS MOTION.

    THIS MOTION IS BASED ON THE FOLLOWING DECLARATION
FROM PETITIONER HERE-ATTACHED.

DATED: JANUARY 03, 2008

                            RESPECTFULLY SUBMITTED,

                            Spencer R. Brasure
                            SPENCER R. BRASURE

(1)

DECLARATION OF SPENCER R. BRASURE

I, SPENCER R. BRASURE, DO HEREBY DECLARE:

I AM THE PETITIONER IN THE CONDITION OF CONFINEMENT/ PRISON DISCIPLINE PETITION FOR WRIT OF HABEAS CORPUS FILED CONCURRENTLY WITH THIS MOTION.

THE ISSUES SET FORTH IN THE PETITION ARE FAR TOO COMPLEX FOR THIS PETITIONER, WHO LACKS THE EDUCATION AND LEGAL EXPERIENCE REQUIRED TO LITIGATE THE ISSUES BEFORE THIS COURT.

I AM INDIGENT AND LACK THE FUNDS AND/OR COLLATERAL REQUIRED TO HIRE COMPETENT LEGAL REPRESENTATION.

I DO NOT HAVE ADEQUATE ACCESS TO A DECENT LAW LIBRARY OR THE MATERIALS THAT COULD BE BENEFICIAL TO THIS PETITIONER.

THE POSTAL SERVICES HERE IN SAN QUENTIN ARE VERY PROBLEMATIC AT THIS TIME AND HAVE BEEN.

BASED ON THE FACTS HEREIN, AND POTENTIALLY OTHERS, THIS PETITIONER REQUESTS THIS COURT TO APPOINT COMPETENT COUNSEL FOR ADEQUATE REPRESENTATION OF THE ISSUES.

I, SPENCER R. BRASURE, HEREBY DECLARE UNDER THE PENALTY OF PERJURY THAT THE ABOVEFORMENTIONED IS TRUE AND CORRECT AS EXECUTED ON THIS 03RD. DAY OF JANUARY 2007, THURSDAY.

Spencer R. Brasure
SPENCER R. BRASURE

(2)

Name  SPENCER R. BRASURE
      Filing in pro per
Address  SAN QUENTIN STATE PRISON

P.O. BOX # P10000

SAN QUENTIN, CALIF. 94964

CDC or ID Number    # P10000



FILED                    MC-275
Court of Appeal First Appellate District

JAN 16 2008

Diana Herbert, Clerk
By_____ Deputy Clerk

# FIRST DISTRICT COURT OF APPEAL
## STATE OF CALIFORNIA
(Court)

SPENCER R. BRASURE, et. al.
Petitioner

vs.

ROBERT AYERS, WARDEN,
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. A12○○○17

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

- [ ] A conviction
- [ ] A sentence
- [x] Jail or prison conditions
- [ ] Other *(specify):* _____
- [ ] Parole
- [ ] Credits
- [x] Prison discipline

1. Your name: __SPENCER R. BRASURE__

2. Where are you incarcerated? __SAN QUENTIN STATE PRISON__

3. Why are you in custody?  [x] Criminal Conviction   [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

__MURDER , KIDNAPPING , TORTURE__

b. Penal or other code sections: __182 (a)(1) ; 140 ; 140 ; 140 ; 140 ; 166 (a)(4)__
__187(a) ; 207(a) ; 206 ; 451(d) ; 182(a)(1) ; 664/487(a) ; 451(d) ;__

c. Name and location of sentencing or committing court: __VENTURA COUNTY SUPERIOR COURT ,__
__800 S. VICTORIA AVE. , VENTURA , CALIF. 93006__

d. Case number: __CR 42412 A__

e. Date convicted or committed: __JULY 1998__

f. Date sentenced: __AUGUST 24, 1998__

g. Length of sentence: __DEATH__

h. When do you expect to be released? __2008 - 2010__

i. Were you represented by counsel in the trial court?  [x] Yes.   [ ] No. If yes, state the attorney's name and address:

__CHARLES CASSY , 1190 S. VICTORIA AVE. , STE. #203 , VENTURA , CALIF. 93003__
__STEVEN POWELL , 1280 S. VICTORIA AVE. , STE. #125 , VENTURA , CALIF. 93003__

4. What was the LAST plea you entered? *(check one)*

[x] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[x] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SAN QUENTIN STATE PRISON STAFF IMPOSED ILLEGAL PROPERTY CONTROL PUNITIVE DISCIPLINE ON THIS PETITIONER FOR A 90 DAY UNINTERUPTED PERIOD.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

ON FEBRUARY 20, 2007 THIS PETITIONER WAS RELOCATED IN SAN QUENTIN'S ADJUSTMENT CENTER AND HAD ILLEGAL PROPERTY CONTROL IMPOSED AS A PUNITIVE DISCIPLINARY MEASURE WHICH WAS AFFIRMED BY CLASSIFICATION COMMITTEE ON FEBRUARY 28, 2007. THIS PETITIONER BEGAN APPEALING THIS MATTER ON FEBRUARY 28, 2007, UTILIZING THE PRISON'S INMATE ADMINISTRATIVE APPEAL SYSTEM THROUGH THE VARIOUS LEVELS, EXHAUSTING ALL AVAILABLE REMEDIES WITH NO RELIEF, CHALLENGING THE LEGALITY OF SAID IMPOSITION (SEE ENCLOSED INMATE APPEAL, #SQ-07-01031). THE ILLEGAL IMPOSITION OF PROPERTY CONTROL SEVERLY DEPRIVED THIS PETITIONER OF LIFE, LIBERTY, PERSONAL PROPERTY, CANTEEN, PERSONAL PACKAGE, VISIT'S, MAIL — TO NAME A FEW, FOR AN EXTENDED PERIOD OF 90 UNINTERUPTED DAYS.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

CCR 15 §§ 3.330 (a)(b)(c)(d)(e)(f)(G) ; 3331 (c)(1)(2)(3)(e)(i)(j)(1) ; EXHAUSTED INMATE APPEAL, #SQ-07-01031 WITH VARIOUS ATTACHMENTS AND CASE LAW; FEDERAL COURT ORDER RE: THOMPSON CONSENT DECREE — NOW CERTIFIED AS "LANCASTER"

7. **Ground 2 or Ground _____** *(if applicable):*

WITH ILLEGAL PROPERTY CONTROL IMPOSED, PETITIONER'S PROPERTY WAS ULTIMATELY DESTROYED PREMATURELY TO A WRITTEN APPROVAL BY UNIT SERGEANT GRANTING PETITIONER A MAY 15, 2007 DEADLINE IN WHICH TO SEND PETITIONER'S PROPERTY HOME.

a. Supporting facts:

AS A RESULT OF ILLEGAL PROPERTY CONTROL BEING IMPOSED ▆ THIS PETITIONER WAS APPROACHED BY THE ADJUSTMENT CENTER PROPERTY OFFICER AVILA WHO SERVED THIS PETITIONER WITH SEVERAL PROPERTY DISPOSITION RECEIPTS AND INFORMED THIS PETITIONER THAT HE WILL NOT BE STORING ANY OF PETITIONER'S PROPERTY IN THE UNIT'S "HOT PROPERTY" STORAGE, AND THEREFORE WOULD HAVE TO MAKE A DECISION FOR DISPOSITION AS OUTLINED IN (CCR 15 § 3191(c)(1)). THIS PETITIONER CHOSE TO SEND HIS PROPERTY HOME AND WAS GIVEN A DEADLINE DATE OF MAY 15, 2007 IN WHICH TO DO SO. THIS TOOK PLACE ON MARCH 13, 2007. ON MARCH 18, 2007 THIS PETITIONER SUBMITTED A SET OF TRUST WITHDRAWL FORMS, AS REQUIRED, TO PROPERTY OFFICER AVILA WITH INSTRUCTIONS TO SEND THIS PETITIONERS PROPERTY HOME. AFTER RECEIVING NO RESPONSE FROM AVILA THIS PETITIONER AGAIN SENT IN A SET OF TRUST WITHDRAWL FORMS ON MARCH 20TH. AFTER RECEIVING NO RESPONSE FROM AVILA A SECOND TIME THIS PETITIONER SENT IN YET ANOTHER SET OF TRUST WITHDRAWL FORMS ON MARCH 22nd. ONCE AGAIN, THERE WAS NO RESPONSE FROM PROPERTY OFFICER AVILA. WHILE

— CONTINUED —

b. Supporting cases, rules, or other authority:

CCR 15 § 3191(c)(1); AND VARIOUS INMATE APPEALS, DISPOSITION PROPERTY RECEIPTS, AND ATTACHMENTS.

8. Did you appeal from the conviction, sentence, or commitment?  ☑ Yes.  ☐ No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

*VENTURA SUPERIOR COURT*

b. Result *AUTOMATIC DEATH PENALTY APPEAL*    c. Date of decision:

d. Case number or citation of opinion, if known: *CR42412A*

e. Issues raised: (1) *AUTOMATIC APPEAL*

(2) _____

(3) _____

f. Were you represented by counsel on appeal?  ☑ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

*TRIAL LAWYERS (SEE PAGE #2)* / *DIRECT APPEAL: JOHN FRESQUEZ, 801 "K" STREET, STE. #1100, SACRAMENTO, CALIF. 95814*

9. Did you seek review in the California Supreme Court?  ☑ Yes  ☐ No.  If yes, give the following information:

a. Result *ORAL ARGUMENT SET FOR DECEMBER 4, 2007*  b. Date of decision: *OPINION PENDING*

c. Case number or citation of opinion, if known: *# S072945*

d. Issues raised: (1) *MANY*

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

*THIS PETITION NOT RELATED TO MY DEATH PENALTY APPEAL.*

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

*THIS PETITIONER HAS IN FACT EXHAUSTED ALL ADMINISTRATIVE REMEDY TO THE EXTENT THAT THE ADMINISTRATION WAS CLEARLY UNWILLING TO REMEDY IN THE INTEREST OF JUSTICE, SCREENING OUT PETITIONER'S APPEAL, THUS WITH NO RESULTS.*

b. Did you seek the highest level of administrative review available?  ☑ Yes.  ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☐ Yes. If yes, continue with number 13.  ☑ No. If no, skip to number 15.

13. a.  (1) Name of court: _____

  (2) Nature of proceeding (for example, "habeas corpus petition"): _____

  (3) Issues raised: (a) _____

    (b) _____

  (4) Result *(Attach order or explain why unavailable)*: _____

  (5) Date of decision: _____

 b.  (1) Name of court: _____

  (2) Nature of proceeding: _____

  (3) Issues raised: (a) _____

    (b) _____

  (4) Result *(Attach order or explain why unavailable)*: _____

  (5) Date of decision: _____

 c.  *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

THE NAVIGATION THROUGH VARIOUS LEVELS WERE SEVERLY DISRUPTED BY SAN QUENTIN OFFICALS, INCLUDING THE COLLECTION OF RELATED MATERIALS.

16. Are you presently represented by counsel?  ☑ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

YES, DIRECT DEATH PENALTY APPEAL ONLY: JOHN FRESQUEZ, 801 "K" STREET, STE. #1100, SACRAMENTO, CALIF. 95814

17. Do you have any petition, appeal, or other matter pending in any court?  ☑ Yes.  ☐ No. If yes, explain:

AUTOMATIC DEATH PENALTY APPEAL IN CALIFORNIA SUPREME COURT; ORAL ARGUMENT HELD DECEMBER 4, 2007; OPINION PENDING

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: JANUARY 03, 2008

▶ *Spencer R. Braswell*
(SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]     **PETITION FOR WRIT OF HABEAS CORPUS**     **Page six of six**

**— CONTINUED FROM PAGE #4, a. —**

1. EXERCISING DILIGENCE THIS PETITIONER DECIDED TO EXERCISE A
2. LITTLE PATIENCE. ON APRIL 26, 2007 PROPERTY OFFICER AVILA
3. APPROACHED THIS PETITIONER, INFORMING ▓▓ HIM THAT HE IS
4. WITHOUT FUNDS ON HIS INMATE TRUST ACCOUNT AND THEREFORE
5. WOULD BE UNABLE TO SEND HIS PROPERTY HOME. ALREADY
6. SENSING A PROBLEM THIS PETITIONER FILED AN INMATE
7. APPEAL (SEE INMATE APPEAL ▓▓▓▓▓ #SQ-6-07-01839) WITH
8. UNIT SERGEANT, SGT. LAMBOY, REQUESTING TIME IN WHICH TO
9. HAVE THE NECESSARY FUNDS SENT TO THIS PETITIONER SO
10. THAT PETITIONERS PROPERTY CAN BE SENT HOME.
11. SGT. LAMBOY GAVE THIS PETITIONER AN APPROVED DEADLINE
12. DATE OF MAY 15, 2007. ON MAY 14, 2007 THE PRISON'S
13. INMATE TRUST OFFICE NOTIFIED THIS PETITIONER THAT THEY
14. HAD IN FACT RECEIVED A "WWW.JPAY.COM." MONEY DEPOSIT OF
15. $239.00 FOR THIS PETITIONER AS OF MAY 11, 2007 — FOUR
16. DAYS PRIOR TO THE WRITTEN APPROVED DEADLINE DATE OF
17. MAY 15, 2007. SHOCKINGLY, ON MAY 14, 2007, ONE DAY
18. PRIOR TO THE WRITTEN APPROVED DEADLINE DATE, THIS
19. PETITIONER WAS FURTHER ISSUED, VIA INTER-DEPARTMENTAL
20. MAIL, A CDC-128 B NOTICE INFORMING THIS PETITIONER
21. THAT COUNSELOR PALMER, CCI INSTRUCTED PROPERTY
22. OFFICER AVILA TO DISPOSE THIS PETITIONER'S PROPERTY —
23. ON APRIL 24, 2007 — 20 DAYS PRIOR TO SGT. LAMBOY'S
24. WRITTEN APPROVED DEADLINE DATE OF MAY 15, 2007. NEEDLESS
25. TO SAY THIS PETITIONER'S PROPERTY WAS PREMATURELY DESTROYED!
26. DESPITE HAVING THE WRITTEN APPROVED DEADLINE DATE FROM
27. SGT. LAMBOY PETITIONER NEVER ACTUALLY RECEIVED THE
28. INMATE APPEAL OF APRIL 25, 2007 WITH HIS RESPONSE IN MY

— CONTINUED —

— CONTINUED FROM PAGE #4, a. —

1  HANDS. AFTER A WAITING PERIOD OF WHAT I FELT WAS A
2  FAIR WAIT I FILED A TIMELY INMATE APPEAL ON JUNE 13, 2007
3  AND SENT IT TO SGT. LAMBOY, REQUESTING THAT HE SEND ME
4  HIS WRITTEN RESPONSE TO MY APRIL 25th. INMATE APPEAL, CITING
5  HIS RESPONSE, RESULTING FROM HIS PERSONAL INTERVIEW OF MAY 22, 2007.
6  I NEVER RECEIVED A RESPONSE SO I FILED A SECOND SAME-LIKE
7  INMATE APPEAL ON JUNE 20, 2007. AGAIN, I RECEIVED NO RESPONSE.
8  MEANWHILE, I BEGAN SENDING IN REQUEST'S TO REVIEW MY
9  C-FILE IN THE HOPES OF FINDING THIS INMATE APPEAL/RESPONSE
10 FROM SGT. LAMBOY, DATED APRIL 25th./MAY 22nd. THESE C-FILE
11 REVIEW REQUEST'S HAD TO CONSTANTLY BE MADE BY ME BEFORE
12 I FINALLY GOT A RESPONSE, RECEIVING MY C-FILE REVIEW ON
13 NOVEMBER 16, 2007 WHERE I IN FACT FOUND A COPY OF
14 THE INMATE APPEAL/RESPONSE OF APRIL 25th./MAY 22nd.
15 MOREOVER, I FILED A THIRD INMATE APPEAL DATED AUGUST
16 13, 2007 AND AGAIN SENT IT TO SGT. LAMBOY, DEMANDING
17 COMPENSATION FOR MY DESTROYED PROPERTY. UNFORTUNATELY,
18 A RESPONSE CAME THIS TIME, ON A CDC FORM 695, DATED
19 SEPTEMBER 15, 2007, INFORMING THIS PETITIONER THAT THE "TIME
20 FRAME FOR FILING" HAD BEEN "EXCEEDED", EFFECTIVELY
21 SCREENING THIS PETITIONER OUT FROM ANY FURTHER ADMINISTRATIVE
22 APPEAL REMEDY. IF THIS PETITIONER IS CORRECT, ISN'T A "SCREEN OUT"
23 RECOGNIZED AS EXHAUSTED?
24    THIS ENTIRE CRIME WAS CAREFULLY ORCHESTRATED BY SAN
25 QUENTIN SO AS TO DEFRAUD THIS PETITIONER ANY LEGAL
26 RAMIFICATIONS. THE RESULT HAS LEAD TO THIS PETITIONER TO BE
27 DENIED OF LIFE, LIBERTY, PERSONAL PROPERTY, CANTEEN,
28 PERSONAL PACKAGE — TO NAME A FEW. IN THE INTEREST

— CONTINUED —

— CONTINUED FROM PAGE #4, a. —

1  OF JUSTICE THIS PETITIONER SEEKS RELIEF FROM THIS

2  COURT IN THE FORM OF PUNITIVE AND COMPENSATORY DAMAGES,

3  WHICH CAUSED THIS PETITIONER UNDUE DISTRESS AND TORMENT

4  AND DENIAL OF PRIVILEDGES, IN THE COMBINED TOTAL AMOUNTS

5  OF $1 MILLION DOLLARS WHICH IS TO BE RESTITUTION AND

6  TAX FREE, IN ADDITION TO ALL COURT COSTS AND ATTORNEY

7  FEE'S AND FILING FEE'S. THIS PETITIONER, SPENCER R. BRASURE,

8  SO PRAYS,

9     PETITIONER BELIEVES THAT THE PREVIOUS COURT FAILED

10  TO ADDRESS THE ISSUES SET FORTH, AND THEREFORE REQUESTS

11  THIS COURT TO ADDRESS THE ISSUE'S HEREIN. MOREOVER,

12  THE PREVIOUS COURT STATED IN THEIR DENIAL HERE

13  ATTACHED, THAT PETITIONER FAILED TO "ESTABLISH A

14  PRIMA FACIE CASE". FOR THE RECORD AND AS STATED IN

15  PETITIONERS REQUEST FOR APPOINTMENT OF COUNSEL HERE-

16  ATTACHED, THIS PETITIONER LACK'S THE EXPERIENCE TO

17  KNOW AND/OR ARGUE THIS CASE.

18

19

20

21

22

23

24

25

26

27

28

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  **NOV 1 0 2007**

In re:  Spencer Brasure, P10000
California State Prison, San Quentin
San Quentin, CA 94964

IAB Case No.: 0705264          Local Log No.: SQ-07-01031

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J.G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that the Institution Classification Committee failed to postpone his transfer to the Adjustment Center (AC) to allow him to consume perishable items from his property package and to avoid additional property restrictions. Further, he reports that as a condemned Grade "B" inmate the amount of property he is allowed to possess is limited; and the implementation of property control is in violation of the Thompson Decree. He requests that ICC reconsider his request to delay his transfer to the AC so he may consume the perishable property he has received.

**II   SECOND LEVEL'S DECISION:** The reviewer found that departmental policy allows that an inmate's property privilege is subject to the control of the Department based on his actions and the security needs of the institution. The appellant was found in control of dangerous contraband and violated the property procedures and policies of San Quentin State Prison's (SQ) Condemned Unit. The appellant's misconduct was reviewed and restrictive measures were imposed to prohibit him from committing further violations of possessing contraband. Additionally, property restrictions are imposed to eliminate the intensive searches necessitated when an inmate possesses an exorbitant amount of property. On May 24, 2007, the appellant was removed from property control and his property was returned to him the same day.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.   FINDINGS:** While the institution failed to address the appellant's issue regarding the Thompson Decree, it should be noted the appellant is no longer on restriction. In the policy memorandum dated June 3, 2003, entitled Revised Property Control Procedure, Warden Woodford authorized property restrictions for a condemned inmate who demonstrates a propensity for violence. The appellant has not established that his actions were not cause to impose property control or that the June 3, 2003, policy has been rescinded. No further review at the Director's Level of Review is warranted.

   **B.   BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3006
CDC Operations Manual Section: 54030.1

   **C.   ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SQ
        Appeals Coordinator, SQ

※ EMERGENCY APPEAL EXCEPTION: CCR 15 § 3084. / (a)(1)(B)(A)(e)(1)(3)

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. SQ
2.

Log No.
1. 07-01031
2.

Category 5

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| BRASURE | P-10000% | INNOCENT DEATH ROW PRISONER | 3-AC-65 |

A. Describe Problem: PETITIONER WENT BEFORE A I.C.C. HEARING TODAY TO DISCUSS THIS PETITIONERS MOVE TO THE A.C. DESPITE THE FACT THAT THIS PETITIONER HAS NOT HAD A 115 HEARING YET, I.C.C. ELECTED TO **CONTINUE** HIGHLY CONTROVERSIAL "PROPERTY CONTROL" UPON PETITIONER. ROUGHLY A WEEK PRIOR TO PETITIONER'S MOVE TO THE A.C., PETITIONER HAD RECEIVED HIS ANNUAL PACKAGE & SOME CANTEEN ITEMS IN EXCESS OF $200. PETITIONER REQUESTED THAT I.C.C. DELAY, AT THE VERY LEAST, PROPERTY CANTEEN OVER PETITIONERS ANNUAL PACKAGE & CANTEEN FOR AT LEAST 2 WEEKS IN ORDER TO CONSUME ALL PERISHABLE ITEMS AS THE **ENTIRE** PERISHABLE CONTENTS WOULD BE — **CONTINUED** —

If you need more space, attach one additional sheet. REMOVE THIS ILLEGAL PROPERTY CONTROL!

B. Action Requested: I.C.C./SAN QUENTIN STAFF HAS THE OPPORTUNITY TO RECONSIDER THIS PETITIONER'S REQUEST, IN THE INTEREST OF JUSTICE, AND SHOULD THEY DECIDE TO MAINTAIN THEIR DECISION, THEN ACCOUNTABILITY MUST BE SET FORTH ACCORDING TO CCR 15 § 3084.7 (e)(2)(A) & § 3000.5 (c)

Inmate/Parolee Signature: Spencer R. Brasure #P10000    Date Submitted: 02-28-07

C. INFORMAL LEVEL (Date Received: 03/08/07 )

Staff Response: Request denied. You were found with dangerous contraband in your property. Unit policy states that if you are found in possession of dangerous contraband you are placed on property control for a period of 90 days. Additionally this 90 day may be extended by ICC of Unit staff deemed it necessary.

Staff Signature: [signature]    Date Returned to Inmate: 03/09/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

NOT SATISFIED! I REQUEST AN INTERVIEW!! THESE "WEAPONS" WERE NEVER IN MY POSSESSION! I HAVE A DISPOSITION RECEIPT SPECIFICALLY IDENTIFYING THESE "WEAPONS" AS HAVING BEEN IN SOLE POSSESSION OF E/B PROPERTY OFFICERS SINCE JUNE 2004! FOR UNRELATED MATTERS! FURTHERMORE, PROPERTY CONTROLL IS ILLEGAL!!

Signature: Spencer R. Brasure #P10000    Date Submitted: 03-09-07
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

CC: FEDERAL JUDGE W. ALSUP; STEVE FAMA- PRISON LAW OFFICE;
ATTORNEY GENERAL ; CDCR SECRETARY-SACRAMENTO;
LAWYER CHARLES CARBONE

MAR 1 3 REC'D

**-CONTINUED FROM 602 § A. —**

...RPOSELY DESTROYED BY SAN QUENTIN STAFF DUE TO THE ITEMS EXPIRATION
...TES WHICH WILL EVENTUALLY BECOME EXCEEDED BY FAR. I.C.C. QUICKLY
...EJECTED THIS PETITIONERS REQUEST, ESSENTIALLY CONFIRMING THAT THEY WILL
...LOW THIS PETITIONER'S ANNUAL PACKAGE § CANTEEN ITEMS TO BECOME DESTROYED.
...ING THAT PETITIONER'S PERISHABLES WILL THEN BE IN THE SOLE CUSTODY OF
...N QUENTIN STAFF, IT WILL BE SAN QUENTIN STAFF WHO IS TO BE HELD ACCOUNTABLE
...L THE, CCR 15 §3084.7 (e)(2) "REPLACEMENT OR RESTORATION OF PROPERTY." THESE
...PECTATIONS MUST BE MET ACCORDING TO, CCR 15 §3084.7 (e)(A) WHICH STATES, "AN
...TEMPT SHALL BE MADE BY STAFF TO USE LOCAL RESOURCES TO SUBSTITUTE FOR, OR
...PLACE LOST PROPERTY AT NO COST TO THE STATE, OR TO REPAIR THE ITEM AT
...STITUTIONAL EXPENSE. CCR 15 §3000.5 (c) DEFINES "SHALL" IS MANDATORY.
...RTHERMORE, THIS PETITIONER IS FULLY AWARE THAT SAN QUENTIN OFFICIALS ARE IN FACT
...WARE THAT THEIR PROPERTY CONTROL PROCEDURES ARE ABSOLUTELY ILLEGAL AND WAS
...RICTLY ORDERED, NOT ONLY BY STEVE FAMA OF THE PRISON LAW OFFICE BUT ALSO IN A
...URT ORDER BY FEDERAL DISTRICT COURT JUDGE W. ALSUP, TO STOP SUCH CRUEL
...ACTICES THAT SAN QUENTIN IS NOW SUBJECTING THIS PETITIONER TO, IN VIOLATIONS
... THIS PETITIONERS CONSTITUTIONAL RIGHTS, ESSENTIALLY TELLING JUDGE W. ALSUP
..."F___-OFF!" ADDITIONALLY, CAN YOU PLEASE CITE ME, IN WRITING, THE VALID
...D UP TO DATE AUTHORITY THAT ALLOWS YOU (SAN QUENTIN) TO EXERCISE THIS HIGHLY
...NTROVERSIAL AND VERY ILLEGAL PROPERTY CONTROL PERTAINING TO DEATH ROW INMATES
...AT IS BEING FORCED UPON THIS PETITIONES? AS IT NOW STANDS THERE IS ABSOLUTELY
...NO WAY TO ARGUE AGAINST THIS ILLEGAL PROPERTY CONTROL, WHATSOEVER, AS THERE
...S NO VALIDLY RECOGNIZED WRITINGS REGARDING PROPERTY CONTROL AN: CCR 15, I.P. 608
...P. 215, OR THOMPSON DECREE THAT EITHER THE OFFICE OF ADMINISTRATIVE LAW OR
...DERAL JUDGE W. ALSUP RECOGNIZES! FEDERAL JUDGE W. ALSUP SPECIFICALLY DENIED
...E REQUEST TO MODIFY 'PROPERTY CONTROL' INTO THE THOMPSON DECREE.

Attachment "A"
Appeals # 07-01031
Response to Section E

March 23rd, 2007

From: D. Edwards, CCII
       East Block Condemn Unit

To:    Brasure, P10000

RE:  ·  Response to First Formal Level of Appeal
       Appeal # 07-01031

**Subject was Interviewed on 3/23/07**

       Inmate Brasure,

**Background Information:**

Per your CDCR-602 appeal dated 2/28/07, you are filing an Appeal requesting that your
personal property and legal material be returned to you and that you not be kept on
Property Control as imposed by ICC action.

**Governing Regulations:**
**CCR-Title 15**
**3000:**
Contraband means anything which is not permitted, in excess of
the maximum quantity permitted, or received or obtained from an
unauthorized source.

3190
 (a) Dangerous Property. Inmates may not possess or have under
their control any weapons, explosives, explosive making material,
poisons or any distructive devices, nor shall they possess or assist
in circulating any writing or voice recording which describes the
making of any weapons, explosives, poisons, or destructive
devices.
3287
(2) Cell and property inspections are necessary in order to
detect and control serious contraband and to maintain institution
security. Such inspections will not be used as a punitive measure
nor to harass an inmate. Every reasonable precaution will be taken
to avoid damage to personal property and to leave the inmate's
quarters and property in good order upon completion of the
inspection.

3191
Property not in compliance with 3190, shall be disposed of in accordance with this section. An
inmate shall select one of the methods listed below for disposing
of personal property which is unauthorized pursuant to subsection
(b) and sections 3006 and 3190. If the inmate makes no selection

State of California

Department of Corrections

# Memorandum

e:    June 3, 2003

To:    ALL INMATES
       ALL STAFF

Subject:    REVISED PROPERTY CONTROL PROCEDURE

*NO SUCH PROCEDURE WAS EVER LEGALLY IMPLEMENTED*

The following procedure is a revision to the San Quentin Institutional Procedures, #608, Condemned Manual, regarding property control and restrictions. The procedure will be effective June 1, 2003.

Any inmate in the condemned program housed in either East Block, North Segregation or the Adjustment Center, who demonstrates the propensity of violence (i.e., Battery on staff, planning to batter staff or inmates, gassings, assaults upon other inmates, disruptive behavior), will immediately be placed on "Property Restriction". The Unit III, Institutional Classification Committee (ICC), will review all case factors within ten (10) days to determine the appropriateness of the property restriction. ICC may impose the restriction for an initial period of ninety (90) days. The 90-day period will commence on the date of the incident. ICC will review the property restriction upon the final audit of the Rules Violation Report (RVR) to determine if the restriction should be continued, modified, or terminated.

The property restriction shall continue for the duration of the 90-day period. The inmate will be scheduled to appear at ICC at the end of the 90-day period. ICC may reinstate the property privilege, modify the restriction or continue the property restriction. ICC shall review the disciplinary history, the seriousness of the RVR and the inmate's behavior over the 90-day property restriction period. Restoration of property privileges is dependent upon the inmate's overall behavior during the 90-day restriction period.

Property restrictions will include the following items:
- ALL PERSONAL PROPERTY
- ALL PERSONAL CLOTHING (not to include state issued clothing)
- ALL ELECTRICAL APPLIANCES
- ALL IN-CELL HOBBY MATERIALS
- LOSS OF QUARTERLY/ANNUAL PACKAGES
- LOSS OF CANTEEN PRIVILEGES
- LOSS OF LEISURE READING MATERIAL (not to include religious or legal documents) Inmates will only be entitled to one box of legal material equal to one cubic foot.

D. Dacanay
Associate Warden – Unit III

T. Goughnour
Chief Deputy Warden

J. S. Woodford

or has insufficient funds, staff shall document that fact and
determine the method of disposition.

**DOM:**
**54030.4 Amount of Property Allowed**
The combined volume of state-issued and allowable personal property items of an inmate in general population shall not exceed six cubic feet excluding
designated work clothing and work shoes.
Lesser but reasonable total volume limits may be set by the Warden with the Director's approval, when the institution's inmate quarters or other storage will not
accommodate the maximum volume permitted.
Inmates may possess personal property items in their living area that present no threat to institution security or safety of persons.
Privilege
Inmates shall possess only the amount of property that is specifically authorized. Any property found in an inmate's possession which exceeds the established
limits may be confiscated and recorded on a CDC Form 128-B, General Chrono with a copy to the C-File, inmate, unit, and R&R (including the mailroom
property file, if appropriate). The possession of personal property is a privilege extended only to those inmates demonstrating acceptable behavior patterns.
This privilege may be withdrawn for specific periods as disciplinary action, when the misbehavior relates to misuse of personal property privileges. (Refer to
CCRs 3190 and 3287).

## Discussion:

Brasure was in good physical and mental Health. He was given an opportunity to review his 602 and supplemental information. He stated he understood the issues and did not need a Staff Assistant. During the interview, the Subject was allowed to present and discuss his issues. Subject was interviewed in the Adjustment Center Conference room. In addition to this interviewer, C/O G. Lemos was present during a portion of the interview as he had information relevant to the Appellant's issues over property control, but not admissible for this appeal.

Appellant's pretense is that he should not be put on property control as he was already limited to the amount of property he was allowed to posses as a Grade B inmate. He also stated that he was not in the possession of material that could be considered weapons or weapon stock. Since the act of possession of contraband was not violent, the Appellant should not be put on property control. Another issue the Appellant had was that if he were to remain on property control, the expendable items that he had purchased recently, would become unusable and would have to be discarded. The appellant feels that since the Department has deprived him of his perishable property, he should be reimbursed for any property that he looses or should have it replaced. In a final statement, the appellant makes the contention that all CDCR-Staff have violated the Thompson decree.



Appellant is advised that per CCR-Title 15 sections 3000, 3190, 3191 3287 and DOM sections 54030.4, property is a privilege that is subject to the control of the Department based on an inmates actions and the security needs needed to properly house the inmate based on his actions. The appellant's actions were such that he was found with contraband that was considered dangerous. Pursuant to the policy of San Quentin's Condemned Unit, an inmate who is found in possession of contraband and violates the "privilege" of property, is subject to restrictive measures that would prohibit said inmate from committing further violations of possessing contraband. Property restrictions are

further imposed to eliminate the intensive searches that would be necessitated by an inmate possessing exorbitant amounts of property.

Specifically per DOM 54030.4, an inmate who misuses property may have his property confiscated "as disciplinary action". Hence the privilege of property can be taken away by the inmates' actions. In the appellant's case, he has misused his property in a way such that his has violated his privileges' and is no longer allowed the property he once possessed. The inmate is advised that it was his actions that caused a loss of his property and the Department is not responsible if items confiscated become unusable. Nor will the Department replace any items that the appellant caused to become unusable.

**Decision:** After a through review of the Appellant's Appeal, an extensive interview, and review of Departmental and Penal regulations, this reviewer finds no sustainable cause wherein the Appellant has grounds that would be cause to grant his request.

**Appeal # 06-07-01031 is Denied in it's entirety.**

CC-II D. Edwards, Special Unit, Condemned
San Quentin State Prison

State of California                                              Department of Corrections and Rehabilitation

# Memorandum

Date:    July 19, 2007


To:      INMATE BRASURE, P-10000
         California State Prison, San Quentin


Subject: SECOND LEVEL APPEAL RESPONSE
         LOG NO.: SQ 07-1031


APPEAL ISSUE: PERSONAL PROPERTY

ISSUE:

Whether or not the appellant's personal property and legal material should be returned to
him and appellant is taken off property control.


FINDINGS I

The appellant filing this appeal alleges that on February 28, 2007 he appeared before
Institutional Classification Committee (ICC) to discuss his move to the Adjustment
Center (AC). Appellant contends he has not received a RVR hearing yet ICC elected to
continue him on property control. Appellant further contends that prior to his housing in
the AC, he had received his annual package and a canteen draw in excess of $200.00.
Appellant claims he requested ICC delay the assignment of property control so that he
could consume all perishable items as the entire perishable content would be purposely
destroyed due to their expiration date. Therefore, the appellant requests ICC committee
members reconsider his request and in the interest of justice he be allowed to have his
personal property.


FINDINGS II

INTERVIEWED BY: D. Edwards, Correctional Counselor II

First level reviewer denied the appellant's appeal on the basis that pursuant to California
Code of Regulations (CCR) Title 15, Section 3000, 3190, 3191, 3287 and Departmental
Operational Manual (DOM) 54030.4 property is a privilege that is subject to the control
of the Department. Additionally, the inmate's actions and the security needs needed to
properly house the inmate property may be restricted. The appellant's actions were such
that he was found with contraband that was considers dangerous. Pursuant to the policy
of San Quentin's Condemned Unit, an inmate who is found in possession of contraband
and violates the "privilege" of property, is subject to restrictive measures that would
prohibit said inmate from committing further violations of possessing contraband.

INMATE BRASURE, P-10000
CASE NO. 07-1031
PAGE 2

Property restriction is further imposed to eliminate the intense searches that would be necessary by an inmate possessing exorbitant amounts of property. Specifically, according to DOM 54030.4, an inmate who misuses property may have his property confiscated "as disciplinary action." Hence, the privilege of property can be taken away by the inmate's actions. In the appellant's case, he has misused his property in a way such that he has violated his privileges and is no longer allowed the property he once possessed.

REGULATIONS: The rules governing this issue are:

**California Code of Regulations, Title 15, Section (CCR) 3190. General Policy.**

**California Code of Regulations, Title 15, Section (CCR) 3191. Property Registration and Disposition.**

**California Code of Regulations, Title 15, Section (CCR) 3270. General Policy.**

**Departmental Operational Manual (DOM) Section 54030.4 Amount of Property Allowed.**

DETERMINATION OF ISSUES:

After review of the available documents, arguments having been presented, as well as referenced regulations, appellant's appeal has been thoroughly considered. Appellant is advised that a thorough inquiry was conducted into his concerns. The inquiry encompassed an interview with Adjustment Center (AC) staff. The following information and facts were determined during the inquiry. During the interview of the third tier records, he stated review of the AC records show the appellant was removed form property control on May 24, 2007. During the interview of Officer J.I. Avila, he stated when the appellant was removed from property control his property was returned to him the same day.

The compelling evidence and convincing argument presented has established that the appellant was placed on property control due to his behavior and loss of canteen/canteen privileges is a part of property control. Furthermore, very few canteen items that do not have a life span of less than 90 days. Matter of fact most items exceed the 90-day property control period. Note if at any time the inmate wishes to send his canteen/property home, he can at his expense. Therefore, based on the aforementioned the appellant's claim does not coincide with the facts represented in the interview of unit staff. The complication of circumstances combined with the verifying documentation indicates that all appropriate policies and procedures, with regards to the appellant's personal property were followed. Upon review of the documentation submitted, it is determined that the appellant's allegations have been thoroughly reviewed and evaluated at the First Level of Review. The documentation and arguments presented are persuasive that the appellant failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the First Level Response.

INMATE BRASURE, P-10000
CASE NO. 07-1031
PAGE 3


Based on the submitted documentation, by both the appellant and first level reviewer, as well as discussions, this reviewer finds that the appellant's issues have been duly addressed. The Second Level Response and the decision reached are based upon a reasonable penological interest. Therefore, based on the information received and reviewed the appellant's appeal is denied.


DECISION:

Based on the above review, appellant's appeal is denied. Appellant has failed to substantiate his contentions documented in his appeal. The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.


ROBERT L. AYERS JR., WARDEN
California State Prison, San Quentin

① ADDENDUM FROM 602 LOG # 07-01031 SECTION F

CCII D EDWARDS IS THOROUGHLY AWARE, BASED ON NUMEROUS PROPERTY CONTROL RELATED 602's, THAT FEDERAL COURT JUDGE WILLIAM H. ALSUP WHO SAT OVER THE ONGOING THOMPSON CONSENT DECREE MATTERS IN COURT, DENIED THE MOTION TO MODIFY THE THOMPSON DECREE IN WHICH CDC ATTEMPTED TO SET FORTH PROCEDURAL REGULATIONS & POLICY ASSOCIATED WITH THE IMPOSITION OF PROPERTY CONTROL. THE IP608 IS VOID! THE ONLY PLACE WHERE SUCH PROVISIONS WERE EVER ILLEGALLY INSTALLED, WERE IN SAID IP608. SEE ATTACHED OCTOBER 4, 2006 COURT ORDER.

FURTHER, CCII D. EDWARDS CITES CCR TITLE 15 & DOM SECTIONS IN HIS FIRST LEVEL REPLY TO THIS APPELLANT'S 602 BUT FAILS TO PROVIDE ANY PROOF THAT "PROPERTY CONTROL" EXISTS IN TITLE 15 OR THE DOM. FACTUALLY, THEY DO NOT!

IN PARAGRAPH 3 IN THE DISCUSSION SECTION OF CCII D. EDWARDS REPLY AT THE FIRST LEVEL ( ATTACHED & ASTERISKED), HE QUOTES VARIOUS TITLE 15 SECTIONS, STATING THAT PROPERTY IS A PRIVILEGE. THIS APPELLANT DOES NOT ARGUE WITH THAT ASPECT OF SAID REPLY. THE PROBLEM HEREIN, IS THAT CCR TITLE 15 SECTION 3330 DISCIPLINARY DETENTION, SPECIFICALLY STATES THAT ONLY 10 DAYS OUT OF A PRESCRIBED 35 DAY PERIOD, CAN CDC REMOVE AN INMATES PERSONAL PROPERTY UNDER THE GUISE OF "PROPERTY RESTRICTION". SEE TITLE 15 SECTION 3331, ARTICLE 6 IS VERY CLEAR REGARDING DISCIPLINARY DETENTION.

THE JUNE 3, 2003 MEMORANDUM AUTHORED BY THE WARDEN J.S. WOODFORD STATES THAT PROPERTY CONTROL IS A IP608 PROCEDURE. IT FURTHER STATES THAT THOSE WHO DEMONSTRATE "THE PROPENSITY OF VIOLENCE" WILL BE

IMMEDIATELY PLACED ON PROPERTY CONTROL. THIS APPELLANT RESPECTFULLY SUBMITS THAT POSSESSION OF CONTRABAND (DANGEROUS OR OTHERWISE), DOES NOT MEET THE STANDARD OF APPLICATION AS IT RELATES TO THE EXACT PROCEDURAL VERBIAGE ASSOCIATED ON SAID STATE-GENERATED CDC MEMO BY WARDEN J.S. WOODFORD.

IT SHOULD BE FURTHER NOTED, THAT THIS APPELLANT IS PROTECTED AS A CLASS MEMBER IN THOMPSON AND THAT PURSUANT TO THE COURT ORDER OF FEB 30TH 1996 MEMORIALIZED BY CLASS COUNSEL IN THIS ACTION (THE PRISON LAW OFFICE), "REMOVING PROPERTY FROM ADJUSTMENT CENTER PRISONERS COULD NOT BE RECONCILED AND FURTHER, RAISED CONSTITUTIONAL ISSUES.(SEE, IN RE, FLINNER) BY PLO ATTY STEVEN FAMA. TAKING THAT FACTUAL NOTICE WITH CASE AUTHORITY, A JUDGE'S RULING AND NUMEROUS FILINGS PROVIDING TOTAL ARGUMENTATIVE POSTURE WHILE PROVING THAT SAN QUENTIN CONTINUES TO INDISCRIMINATELY IMPOSE ILLEGAL PUNISHMENTS NOT OTHERWISE MANDATED IN TITLE 15, THE DOM, OR THE THOMPSON DECREE, IT IS CLEAR THAT SUCH PUNITIVE PUNISHMENTS MUST BE STOPPED. WILLFUL AND MALICIOUS VIOLATIONS ON BEHALF OF STATE EMPLOYEES ARE UNACCEPTABLE PER SECTION 3391 OF CCR TITLE 15.

EVEN IF PROPERTY CONTROL WAS A LEGAL PUNITIVE PUNISHMENT, THE BOGUS JUNE 3, '03 MEMO WOULDN'T ENCOMPASS THIS APPELLANT'S ALLEGED MISCONDUCT FOR POSSESSION OF CONTRABAND.

### III

THE VERY IRONY WHICH IS NOTED BY APPELLANT, IS THAT NOT ONE PERSON CAN SUBSTANTIATE THE IMPOSITION OF SAID PUNISHMENT WITH AN OFFICE OF ADMINISTRATIVE LAW (OAL) REGULATION REGARDING "PROPERTY CONTROL" FOR PERIODS OF TIME WHICH OTHERWISE ARE FOUND NOTED IN SECTION 3330 & 3331 IN CCR TITLE 15.

ASSUMING FOR THE SAKE OF ARGUMENT, THAT I WAS INDEED ELIGIBLE FOR SAID RESTRICTIONS, THE OTHER ISSUE HEREIN FOR THE BENEFIT OF THIS REVIEWER, IS THAT I WAS PLACED ON PROPERTY CONTROL BEFORE EVER BEING AFFORDED ANY DUE PROCESS. MY PROPERTY CONTROL BEGAN ON FEBRUARY 20TH, 2007 — FURTHER AFFIRMED ILLEGALLY BY ICC ON FEB 28TH, 2007 FOR AN INITIAL PERIOD OF 90 DAYS (IN VIOLATION OF CCR TITLE 15 SECTIONS 3330 & 3331) AND ALL OF THIS OCCURED NOT ONLY BEFORE I RECEIVED A RULE VIOLATION 115 BUT MORE IMPORTANTLY AND CERTAINLY IN VIOLATION OF TITLE 15 AND FEDERALLY MANDATED STATUTES ASSOCIATED WITH THE 14TH AMENDMENT OF THE U.S. CONSTITUTION, BEFORE I WAS EVEN HEARD ON THE MATTER AND FOUND GUILTY OF SAID RULE VIOLATION. TO DATE, I HAVE NOT BEEN FOUND GUILTY OF SAID RULE VIOLATION ALTHOUGH I WAS PUNITIVELY PUNISHED EVEN BEFORE RECEIVING A WRITE UP. THESE ARE SERIOUS PROCEDURAL VIOLATIONS KNOWN TO THE SAN QUENTIN STATE PRISON ADMINISTRATION, YET THEY CONTINUE TO DO SO,

IV

COSIGNING A CONTROVERSIAL, NEVER-COURT-APPROVED, NOT IN ANY RECOGNIZED CDC POLICY, POLICY.

THE CLEAR AND EVER-PRESENT CERTAINTY ASSOCIATED WITH THIS SAN QUENTIN STATE PRISON ADMINISTRATION BEING EFFECTIVELY NOTICED BY THE CLASS COUNSEL FOR CONDEMNED INMATES AND BY THE FEDERAL DISTRICT COURT ON OCT 2ND, 2006 & OCT 4TH, 2006 RESPECTIVELY DEPICTS THE EGREGIOUS AND INDISCRIMINANT WAYS THAT UPPER-ADMINISTRATIVE PERSONNEL CONTINUE TO VIOLATE LAWS AND ABUSE THEIR POWER, ESSENTIALLY FORGOING ANY MEANINGFUL REPRESENTATIONS OF LAW AND PERSONAL NOTIFICATION THEREOF.

THIS APPELLANT KNOWS THAT THE OCTOBER 4TH, 2006 COURT ORDER BY FEDERAL JUDGE WILLIAM H. ALSUP WAS PROVIDED TO THIS PRISON ADMINISTRATION. THE MOTION TO MODIFY THE THOMPSON CONSENT DECREE AND IMPLEMENTING THE "PROPERTY CONTROL" POLICY WAS AND REMAINS DENIED. (SEE ATTACHED COURT ORDER)

ON OCTOBER 2ND, 2006 — STEVEN FAMA OF THE PRISON LAW OFFICE FAXED THE WARDEN OF SAN QUENTIN ON BEHALF OF I/M FLINNER V-30064, EFFECTIVELY EXPLAINING THAT PROPERTY CONTROL IS/WAS ILLEGAL. FLINNER SOUGHT RELIEF AND IN 602 LOG # 06-2696, SACRAMENTO GRANTED HIS APPEAL, STATING THAT PROPERTY CONTROL WAS NOT AN APPROPRIATE PUNISHMENT FOR HIS ALLEGED VIOLATION.

COMPOUNDED BY THE FACT THAT NUMEROUS DUE PROCESS VIOLATIONS CONTINUE TO OCCUR AS

## Ⅴ.

SAN QUENTIN IMPOSES THIS ILLEGALLY - PRESCRIBED AND NON-MANDATED PUNITIVE PUNISHMENT UPON THE CONDEMNED CLASS OF INMATES, THIS APPELLANT HEREIN PROVIDES COPIES OF DOCUMENTATION TO THOROUGHLY SUPPORT THE CONTENTIONS AFOREMENTIONED.

THIS APPELLANT REQUESTS RELIEF IN THE FORM OF IMMEDIATE REMOVAL FROM PROPERTY CONTROL & ALL OF HIS PROPERTY RETURNED, COMPENSATION BY SAN QUENTIN FOR ALL ITEMS TAKEN, AND DESTROYED WHICH INCLUDE BUT ARE NOT LIMITED TO PERISHABLE FOOD PRODUCTS, ETC. FURTHER, APPELLANT REQUESTS THAT A MEMORANDUM BE GENERATED THAT ALLEVIATES THE CONDEMNED POPULATION'S EXPOSURE TO PROPERTY CONTROL.

SAID AFOREMENTIONED RELIEF WILL NOT REMOVE CDCR & ITS EMPLOYEES FROM LIABILITIES WHICH CAN BE ATTACHED WHILE PURSUING LEGAL REMEDIES.

RESPECTFULLY SUBMITTED,

Spencer R. Brasure - Spencer R. Brasure

✱ A CURSORY REVIEW OF THE NEW FEDERAL COURT ORDER BY JUDGE WILLIAM H. ALSUP DATED 6-21-07, WILL PROVE THIS APPELLANT'S CONTENTION REGARDING THE ONLY LOCATION WHERE PROPERTY CONTROL WAS EVER EFFECTIVELY MEMORIALIZED, BEING THAT OF THE VOID (NEVER MANDATED BY LAW OR OAL) IP/OP 608. SEE

SEE EXHIBIT "A"

COURT SPECIFICALLY REFERENCES THE DECREE BEING "ENFORCEABLE" AS WRITTEN. THE THOMPSON DECREE & THE IP/OP 608 ARE TWO DIFFERENT THINGS. THE PRISON ADMINISTRATION REFERS TO 608 AS THE "CONDEMNED MANUAL" — IT IS THE ADMINISTRATIONS GUIDE ON HOW TO USE AND INTERPRET THE LANGUAGE EMBODIED IN THE ORIGINAL THOMPSON CONSENT DECREE (NOW LANCASTER). THE IP/OP 608 IS NOT PART OF THE DECREE. IT IS SOMETHING AUTHORED MANY YEARS AFTER THE ORIGIN OF THOMPSON IN 1979. ON PAGE 6, LINES 17-28 AND PAGE 7, LINES 1-3, IT IS HARD TO MISS WHERE THE JUDGE SPECIFICALLY STATES THAT NO MOTIONS HAVE BEEN EFFECTIVELY MADE TO MODIFY THE DECREE NOR HAVE ANY BEEN GRANTED. THE 608 IF IT WERE LEGAL (THE ONLY PLACE BEARING THE PROPERTY CONTROL ISSUE BEING ALLEGEDLY ENFORCEABLE) IS NOT PART OF THE THOMPSON DECREE AS NOTED ON PAGE 7 LINE 2-3 "AS WRITTEN".

THE IP/OP 608 IS AN UNDERGROUND REGULATION AND HAS BEEN CORRUPTLY UTILIZED TO MALICIOUSLY PUNISH THE CONDEMNED POPULATION WHILE NEVER BEEN MANDATED IN EITHER CCR TITLE 15 OR THE THOMPSON CONSENT DECREE (HEREIN AFTER IDENTIFIED WITH AS LANCASTER).

PLEASE EXHAUST THIS APPEAL FOR FEDERAL COURT ACTION.

THANK YOU
Spencer Brashure
#P-1000

FIRST CLASS

✳ CONFIDENTIAL LEGAL MAIL ✳

Spencer R. Brasure #P10000
San Quentin State Prison; Death Row
P.O. Box #P-10000
San Quentin, Calif. 94964

RECEIVED

APR 11 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

INNOCENT DEATH ROW PRISONER

✳ CONFIDENTIAL
LEGAL MAIL ✳

United States District Court
For The Northern District
of California

ATTN: Judge W. Alsup

Office of the Clerk
450 Golden Gate Ave.
Box #36060
San Francisco, Calif. 94102

✳ CONFIDENTIAL
LEGAL MAIL ✳

s Mail

FIRST

UNITED STATES
POSTAL SERVICE

DELIVERY CONFIRMATION

United States Postal Service

420 941020000 99 1000

0307 1790 0000 8429 5537

PRIORITY MAIL

LABEL 107R, OCT 1997

WWW.USPS.COM

USA

\* CONFIDENTIAL  LEGAL  MAIL  \*

It is a federal crime to tamper with any mail in any way or form. This includes San Quentin staff making unlawful comments and writings on this envelope and contents, and the intentional theft and destruction of any of my mail, as well as the deliberate and malicious switching of contents from one envelope and into another.

YOU'RE  BEING  MONITORED !